**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CONSECO SERVICES, L.L.C. AND ) <br> BANKERS LIFE AND ) <br> CASUALTY COMPANY, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) Case No. 09-2130-CM <br> ) <br> MATT V. ALEXANDER, ) <br> ) <br> Defendant. ) <br> ) | |

## MEMORANDUM AND ORDER

This claim arises from a former employee's registration and use of various websites containing plaintiffs' trademark or domain names similar to plaintiffs' marks. Defendant Matt Alexander's websites express criticisms of plaintiffs Conseco Services, L.L.C. and Bankers Life And Casualty Company and their employees and attempt to cast plaintiffs in a negative light. Plaintiffs allege the following Lanham Act claims against defendant: anti-cybersquatting consumer protection act under 15 U.S.C. § 1l25(d); federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and federal dilution under 15 U.S.C. § 1125(c). Plaintiffs also allege state law claims of dilution in violation of K.S.A. § 81-214; defamation; and tortious interference with contractual and business relationships.

This matter is before the court on defendant's Motion to Dismiss Plaintiffs' Complaint and for Partial Summary Judgment (Doc. 7). In his motion, defendant argues that plaintiffs' claims should be dismissed for failure to state a claim under Rule 12(b)(6) and/or for lack of subject matter jurisdiction

-1-

under Rule 12(b)(1). Because defendant submitted evidence outside of the pleadings, defendant requests that the court convert his motion to dismiss into a motion for summary judgment and grant summary judgment in defendant's favor. For the reasons set forth below, defendant's motion is granted in part and denied in part.

I.     **Legal Standards**

When the court considers matters outside the pleadings, the court must treat the motion as one for summary judgment, and "all parties must be given reasonable opportunity to present all the material that is pertinent to the motion." Fed. R .Civ. P. 12(d). When neither party is prejudiced, a court may convert a motion to dismiss into a motion for summary judgment without giving notice or time for additional briefing. *Robinson v. Mt. Carmel Med. Ctr.*, *Inc.*, No. 05-1091-MLB, 2005 WL 1521962, at *1 (D. Kan. June 27, 2005) (citing *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 713–14 (10th Cir. 2005)). Here, the court finds that converting defendant's motion to dismiss into a motion for summary judgment would prejudice plaintiffs. Additionally, a motion for summary judgment is premature. Under Rule 56(f) "'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006) (quoting *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). Although relief under Rule 56(f) is not automatic, the court finds that plaintiffs have met their burden to show that summary judgment is premature at this stage of the proceeding. Therefore the court will consider defendant's motion as a motion to dismiss under Rules 12(b)(1) and (6).

The court may only exercise jurisdiction when specifically authorized to do so, *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of*

*County Comm'rs*, 895 F. Supp. 279, 281 (D. Kan. 1995) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). The party seeking to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball League*, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may go beyond the allegations in the complaint and challenge the facts on which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). When reviewing a factual challenge, the court cannot accept the allegations in the complaint as true. *Id.* The court has wide discretion to consider evidence outside of the pleadings. *Id.* Consideration of extrinsic evidence does not convert a Rule 12(b)(1) motion into a motion for summary judgment unless the jurisdictional issue is intertwined with the merits of the case; the two are intertwined "if subject matter jurisdiction is dependant on the same statute which provides the substantive claim in the case." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded facts in plaintiffs' complaint and views them in a light most favorable to plaintiffs. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also* Fed. R. Civ. P. 8(a).

## II. Discussion

### A. *Anti-Cybersquatting Consumer Protection Act Under 15 U.S.C. § 1l25(d)*

"Congress enacted the Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of 'cybersquatting,' which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry v. Found. for Apologetic*, 527 F.3d 1045, 1057 (10th Cir. 2008) (internal quotations omitted). To allege a cybersquatting claim plaintiffs' must allege (1) defendant registered, trafficked in, or used a domain name, (2) which is identical or confusingly similar to a plaintiffs' mark, or dilutive of a plaintiffs' famous mark, (3) plaintiffs' mark was distinctive or famous at the time of defendant's registration, trafficking, or use, and (4) defendant acted with a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(A).

Defendant argues that this claim must be dismissed because plaintiffs have failed to allege any conduct that defendant acted with a bad faith intent to profit from the mark. Specifically, defendant argues that plaintiffs have conceded that defendant was seeking reimbursement of legitimate business expenses. Upon review of the record, the court finds no such concession. The complaint merely sets forth that defendant claimed the reimbursement was owed to him—not that plaintiffs believed he was entitled to it. The complaint also alleges that one of the websites indicated that the domain names were for sale. Plaintiffs' complaint clearly asserts that plaintiffs believe that defendant was cybersquatting in an effort to extort money from them.

Defendant also argues that he is protected by the safe harbor clause of the ACPA. The court finds that plaintiffs' allegations defeat this argument. Defendant's motion is denied with respect to plaintiffs' cybersquatting claim.

### B. *Unfair Competition and False Designation*

Defendant argues that plaintiffs' unfair competition and false designation claim must be dismissed because (1) plaintiffs failed to allege a sufficient connection to commercial activity; (2) plaintiffs lack standing to sue on behalf of Keith Bankston and Peter Wilkins; and (3) the domain name "blcsucks.com" does not create a likelihood of confusion.

#### 1. **Commercial Activity**

"Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked." *Utah Lighthouse Ministry*, 527 F.3d at 1054. Plaintiffs set out two ways in which they allege that defendant made commercial use of plaintiffs' marks: (1) defendant's alleged extortion scheme to sell a domain name that was confusingly similar to plaintiffs' trademarks and (2) defendant's alleged profit from selling advertisements on the websites.

The Tenth Circuit has not determined whether selling a domain name containing a trademark violates the Lanham Act, but it has been clear that "the defendant in a trademark infringement and unfair competition case must use the mark in connection with the goods or services of a competing producer." *Id*. at 1053. "[O]ther courts have held that a so-called cybersquatter, who registers domain names with the intent to sell the name to the trademark holder, uses the mark 'in connection with the sale of goods[.]'" *Taubman Co. v. Webfeats*, 319 F.3d 770, 777–78 (6th Cir. 2003). But those courts limited their holdings to instances where the defendant made a habit and a business of such practices, *id.* (citing *E & J Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 270 (5th Cir. 2002); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)), and evaluated whether the defendant's initial motive in selecting the mark was to re-sell the name. *Id*. at 776; *see also Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227, 1239 (N. D. Ill. 1996) ("[The defendant's] desire to resell the domain name is

sufficient to meet the 'commercial use' requirement of the Lanham Act."). Plaintiffs' complaint does not allege that defendant made a habit and business of selling domain names, that his initial motive in selecting the mark was to re-sell the name, or that the alleged extortion scheme was connected to the goods or services of a competing producer. Thus, to the extent plaintiffs' claims are based on defendant's alleged extortion scheme to sell a domain name that was confusingly similar to plaintiffs' trademark, plaintiffs fail to state a valid cause of action.

The Tenth Circuit has not confronted the issue of when hyperlinking renders an otherwise noncommercial website subject to the Lanham Act. *See Utah Lighthouse Ministry*, 527 F.3d at 1052. In *Utah Lighthouse Ministry*, the court found that there was no commercial activity because the website contained no advertising, offered no goods or services for sale, had no direct links to commercial sites, and earned no revenue. This case is distinguishable. Plaintiffs allege that the websites contain advertisements for plaintiffs' competitors, that the advertisements are direct links to plaintiffs' competitor's websites, and that defendant is making a profit from the advertisements. Based on the allegations in the complaint, it is plausible that plaintiffs have a claim for relief based on defendant's alleged profit from selling advertisements on the websites. Accordingly, defendant's motion to dismiss on this ground is granted in part and denied in part.

### 2. Standing

In a footnote in its memorandum in support of its motion to dismiss, defendant alleges that plaintiffs lack standing to sue on behalf of Keith Bankston and Peter Wilkins. The claims in plaintiffs' complaint are brought on behalf of plaintiffs, not its individual employees. The websites and domain names containing the names of plaintiffs' employees are a part of the lawsuit because plaintiffs allege that the websites and domain names were used by defendant in an attempt to extort plaintiffs and that these websites and domain names funneled web traffic to websites that unlawfully used plaintiff

Banker's marks for defendant's commercial activity. Based on the allegations in the complaint, defendant's motion to dismiss for lack of standing is denied; however, defendant's motion is granted to the extent plaintiffs' are bringing claims *on behalf of* Mr. Bankson and Mr. Wilkins.

### 3. Likelihood of Confusion

To allege a claim for unfair competition or false designation, plaintiffs must allege that the marks defendant used are likely to create confusion between the parties' goods or services. *See Primedia Intertec Corp. v. Tech. Mktg. Corp.*, 35 F. Supp. 2d 809, 815 (D. Kan. 1998) (recognizing that the likelihood of confusion is an essential element of unfair competition claims); *Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F. Supp. 1438, 1448 (D. Kan. 1995); ("This 'likelihood of confusion' test is also applicable to plaintiff's claim of false designation of origin pursuant to section 43(a) of the Lanham Act").

Defendant argues that the registration and use of "blcsucks.com" cannot create a likelihood of confusion because of the use of the word "sucks" in the domain name. Citing *Taubman*, the parties appear to agree that the use of the word "sucks" cannot give rise to a likelihood of confusion and that plaintiffs' claims regarding all domain names that incorporate the word are subject to dismissal. 319 F.3d at 777–78 (finding that the addition of the word "sucks" to the trademark removes any confusion as to source). Accordingly, defendant's motion is granted with respect to the domain names that incorporate suck, which appear to be "blcsucks.com"; "bankerslifeandcasualtysucks.com"; "bankerlifesucks.com"; and "bankerssucks.com."

### *C. Dilution*

Defendant argues that plaintiffs' dilution claims must be dismissed because plaintiffs failed to allege a commercial activity. As explained above, plaintiffs' allegations that defendant is profiting by

advertising for plaintiffs' competitors states a plausible connection to commercial activity. Defendant's motion is therefore denied.

### D. *Defamation and Tortious Interference*

Defendant argues that plaintiffs' defamation and tortious interference claims should be dismissed because they are barred by the applicable statute of limitations. Defendant further argues that plaintiffs lack standing to assert their defamation claim.

#### 1. Statute of Limitations

Defendant argues that plaintiffs' defamation and tortious interference claims should be dismissed because defendant's websites were taken down more than two years before plaintiffs filed this action. Defendant's affidavit states that the websites, with the exception of peterwilkins.com, have been continuously inactive for at least two years preceding the filing of this action. Plaintiffs argue that they need to conduct discovery to determine whether the websites have been continuously inactive. Due to nature of the electronic evidence, the ease of posting and removing content on the websites, and the fact that the websites have remained in defendant's control, the court believes that this issue is best resolved after plaintiffs have had an opportunity to conduct discovery on the issue. Defendant's motion to dismiss these claims based on the statute of limitations is denied without prejudice.

#### 2. Standing for Plaintiffs' Defamation Claims

"The tort of defamation includes both libel and slander. The elements of the wrong include [1] false and defamatory words [2] communicated to a third person [3] which result in harm to the reputation of the person defamed." *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293 (1984) (internal citations omitted). "One who publishes defamatory matter concerning a corporation is subject

to liability to it: (a) if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it. . . ." *Nat'l Motor Club of Am., Inc. v. Auto Club of America*, No. 01-4077-SAC, 2003 WL 715902, at *4 (D. Kan. Feb. 12, 2003). Defendant correctly asserts that plaintiffs cannot bring a defamation cause of action on behalf of their employees. *See Hanrahan v. Horn*, 657 P.2d 561, 567 (Kan. 1983) ("Slander questions generally must be brought by the slandered party.").

Plaintiffs' complaint alleges that defendant made disparaging comments about plaintiffs, that the comments were communicated through the internet, and that the comments resulted in harm to plaintiffs' reputation. (*See* Compl. ¶¶ 46–57, 60.) Plaintiffs have stated a defamation cause of action. Plaintiffs' complaint also includes disparaging comments that relate solely to their employees—comments unrelated to the way plaintiffs conduct their business. To the extent plaintiffs wish to allege defamation claims on behalf of their employees or for disparaging comments relating solely to their employees, they must amend their complaint to assert the appropriate causes of action. Because the allegations in plaintiffs' complaint state a cause of action for defamation, defendant's motion is denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss Plaintiffs' Complaint and for Partial Summary Judgment (Doc. 7) is granted in part and denied in part.

Dated this 22nd day of December 2009, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**